IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | |
|---|---|
| DEXTER LEE VINSON, ) | |
| ) | |
| Plaintiff, ) | |
| v.  ) | Case No. 3:06CV230–HEH |
| ) | |
| GENE M. JOHNSON, ) | |
| Director, Virginia Department of ) | |
| Corrections, *et al.*, ) | |
| ) | |
| Defendants. ) | |

**AMENDED MEMORANDUM OPINION**
**(Denying Plaintiff's Request for Preliminary Injunction and**
**Stay of Execution, and Granting Defendants' Motion to Dismiss Complaint)**

This is an action seeking equitable and injunctive relief under Title 42 U.S.C. § 1983 for violations, threatened violations or attempted violations of Plaintiff's right to be free from cruel and unusual punishment guaranteed by the Eighth Amendment and the Due Process Clause of the Fourteenth Amendment of the United States Constitution. Plaintiff, Dexter Lee Vinson, is a Virginia state inmate scheduled to be executed on April 27, 2006. The complaint, filed on April 5, 2006, requests a preliminary injunction or stay of execution to prevent him from being executed in a manner in which he perceives to be unconstitutional.

Plaintiff does not challenge the constitutionality of his state court capital murder conviction or his death sentence. They have been exhaustively reviewed by state and federal courts. *See Vinson v. True*, 432 F.3d 310 (4th Cir. 2005). Both sides have filed detailed memoranda of law supporting their respective positions. The Court heard oral

argument on April 17, 2006.  For the reasons stated below, Plaintiff's request will be denied.

As filed, Plaintiff's complaint assails both methods of execution provided by statute in the Commonwealth of Virginia.  However, subsequent to filing, Plaintiff declined to exercise his option to select lethal injection or electrocution fifteen (15) days before his scheduled execution.  Therefore, by default, Section 53.1–234 Code of Virginia, 1950 as amended, mandates that he be executed by lethal injection.  Consequently, any challenge to the constitutionality of death by electrocution is waived.

Plaintiff's Section 1983 claim purports to be narrowly focused.  He represents that it is not a so-called "chemical recipe claim" challenging the effect of the combination of chemicals employed to carry out the execution.  Rather, he contends that if the chemical protocol is administered in insufficient quantity, by individuals without adequate training or through a "complex mechanism" they would, individually or in concert, "pose a foreseeable and unnecessary risk of causing the inmate to consciously suffer an excruciatingly painful death."  (Compl. ¶ 16.)

Furthermore, Plaintiff asserts that "[a]dministration of the second and third chemicals is humane only if the inmate is put into and maintained in a surgical plane of anesthesia.  A surgical plane is characterized by loss of consciousness, loss of reflex muscle response, and loss of response to noxious stimuli.  If the inmate does not reach

and maintain this depth of anesthesia, he will experience the terror and blinding pain caused by the second and third chemicals." (Compl. ¶ 17.)

In their motion to dismiss, the defendants, all affiliated with the Virginia Department of Corrections, raise a number of substantive and procedural obstacles to the relief Plaintiff seeks. First, the defendants point out that Plaintiff's challenge to the procedures used for execution by lethal injection in Virginia parallel those rejected in *Reid v. Johnson*, 333 F.Supp.2d 543 (E.D. Va. 2004). That decision was affirmed by Order by the United States Court of Appeals for the Fourth Circuit. *Reid v. Johnson*, No. 04-25 (4th Cir. Sept. 8, 2004). The following day, September 9, 2004, the United States Supreme Court denied Reid's application for a preliminary injunction on the same grounds. *Reid v. Johnson,* 542 U.S. 963, 125 S. Ct. 25 (2004).

Defendants next contend that the plaintiff has not satisfied the procedural prerequisites for relief under § 1983 because he has not exhausted his administrative remedies under the Prison Litigation Reform Act of 1995. Defendants argue that Plaintiff failed to request any form of administrative review of his complaint prior to filing suit. The defendants counter that under Department of Corrections policy, his complaint is not of a grievable nature. Defendants, however, maintain that exhaustion is a prerequisite under § 1983 jurisprudence, "[e]ven when the prisoner seeks relief not available in grievance proceedings . . . ." *Porter v. Nussle*, 534 U.S. 516, 524 (2002).

3

Defendants further argue that Plaintiff has waived his right to challenge the lethal injection procedure because he was given the option of death by electrocution, a controversial but constitutional method of carrying out the death penalty. In *Stewart v. LaGrand*, 526 U.S. 115, 119 S. Ct. 1018 (1999), the U.S. Supreme Court held that a prisoner waives his challenge to a method of execution where he is given the opportunity to choose another constitutional method. *Id*. at 119. Plaintiff believes that his case is distinguishable from *Stewart* because the method of execution here was determined by default and not by choice. Plaintiff adds that neither the Department of Corrections nor the Office of the Attorney General of Virginia provided him with sufficient details of the method of execution to enable him to make an informed choice. Plaintiff, however, offers no authority to support such an entitlement.

The defendants also maintain that the scope of Plaintiff's challenge, while couched in narrowing language, is in effect an assault on the method of execution generally as opposed to its specific application to his case, and is consequently barred as a successive habeas claim. In *Nelson v. Campbell*, 541 U.S. 637, 124 S. Ct. 2117 (2004), the U.S. Supreme Court rejected the argument that a condemned inmate's challenge to a specific invasive procedure to be used to carry out his execution was a successive and unauthorized § 2254 action. The Court concluded that the inmate's claim was cognizable under § 1983 because it did not involve a challenge to a state's execution protocol, but instead to a specific arguably unnecessary precursor medical procedure. *Id*. at 644. The

Court declined, however, to reach the difficult issue of whether to categorize method of execution claims as Civil Rights actions under § 1983, or *habeas corpus* actions under § 2254.  The U.S. Supreme Court has recently granted *certiorari* in *Hill v. Crosby*, ___ U.S. ___, 126 S. Ct. 1189 (2006), to resolve this procedural question.

Lastly, Defendants urge the Court to deny Plaintiff's request for equitable relief because his complaint was untimely filed.  Plaintiff was sentenced to death in 1999.  His conviction and death sentence have been reviewed by both federal and state courts at all levels.  He first voiced his concern about the procedures proposed for his execution in this suit, filed twenty-two (22) days before the date set for his execution.  There is nothing new or novel about his claims.  There have been scores of reported decisions addressing Eighth Amendment challenges to lethal injection over the last twenty (20) years.  None have found the procedure to be constitutionally offensive.

Plaintiff explains that the delay in pursuing the immediate Eighth Amendment claim was attributed to his uncertainty as to the method of execution that would be used in his case.  It is his position that the claim would not have been ripe for adjudication until such designation was made.  This argument is undermined, however, by the fact that Plaintiff was aware at the time of his death sentence in 1999 that by statute, he alone had the right to choose his method of execution.

On balance, this Court believes that Plaintiff's complaint lacks merit for a host of reasons.  Unlike the claim before the court in *Nelson*, Plaintiff's challenge is broader and

5

appears to be directed to alleged procedural defects of general application. The cut-down technique proposed in *Nelson* was a procedural adaptation developed for his particular case. In contrast, no special procedures are contemplated with respect to Plaintiff. Plaintiff here contends that the manner in which the lethal chemicals are administered, particularly the quantity of anesthetic drug, "pose a foreseeable and unnecessary risk of causing the inmate to consciously suffer an excruciatingly painful death." (Compl. ¶ 16 .) These perceived constitutional deficiencies pertain to the risks inherit in the lethal injection process generally, as opposed to their particular effect on the plaintiff. To the extent that Plaintiff's claim can be construed to include the chemical combination employed to carry out his execution, this argument was rejected by the Fourth Circuit in *Reid*.

Weighing the Fourth Circuit's decision in *Reid*, along with Plaintiff's apparent failure to exhaust available administrative remedies, and his election by default of death by lethal injection, his likelihood of success on the merits is negligible. More importantly, the scope of Plaintiff's challenge encompasses more than a particular procedure to be applied in his case, it implicates the constitutional integrity of the method of his execution. There is nothing to distinguish his claim from that of any other similarly situated inmate awaiting execution – which may ultimately warrant a finding that this action is, in effect, an unauthorized, successive petition for *writ of habeas corpus*.[1]

---

[1] Plaintiff styles his complaint in the Alternative as a Petition for Writ of Habeas Corpus. To the extent that such relief is requested, it is barred as a successive unauthorized petition over

In order to support his Eighth Amendment claim, Plaintiff is required to demonstrate a substantial risk of unnecessary and wanton infliction of pain. *Wilson v. Seiter*, 501 U.S. 294, 298, 111 S. Ct. 2321 (1991), "contrary to contemporary standards of decency." *Helling v. McKinney*, 509 U.S. 25, 32, 113 S. Ct. 2475 (1993). Plaintiff's claim hinges on the possibility that something may go wrong during the execution process. This is insufficient to prove a cause of action under the Eighth Amendment. *Campbell v. Wood*, 18 F.3d 662, 687 (9th Cir. 1994). Accordingly, the Court finds there is little to no likelihood that Plaintiff could demonstrate a violation of the Eighth Amendment.

Of course, in the final analysis, this Court must apply the "balance of hardships" test to determine whether a preliminary injunction should issue. This requires consideration of the likelihood of irreparable injury to the plaintiff if the preliminary injunction is denied; the likelihood of harm to the defendant if the requested relief is granted; the likelihood that Plaintiff will succeed on the merits; and the public's interest. *Blackwelder Furniture Co. v. Seilig Mfg. Co.*, 550 F.2d 189, 193–96 (4th Cir. 1997). The burden lies with the plaintiff to establish that each of the four (4) factors warrants the exercise of the extraordinary power of injunction. *Direx Israel, Ltd. v. Breakthrough Medical Corp.*, 952 F.2d 802, 812 (4th Cir. 1991).

---

which this Court has no jurisdiction. *See* 28 U.S.C. § 2244(b)(3).

Plaintiff maintains that in the absence of a preliminary injunction, it is likely he will suffer severe and unnecessary pain in the moments before his death due to the negligent administration of the combination of chemicals. Plaintiff's contention, however, is based solely on speculation. He advances no specific instances where such negligence has occurred during the lethal injection process in Virginia. To support preliminary injunctive relief, Plaintiff must show actual and imminent, rather than remote and speculative harm. *In re Microsoft Corp. Antitrust Litigation*, 333 F.3d 517, 530 (4th Cir. 2003).

In the context of this Civil Rights action, the harm to Plaintiff does not include the fact of his inevitable death. *Nelson*, 124 S. Ct. at 2123. Also excludable from the quantitative analysis of likely harm is pain and suffering that is not attributed to the drugs to be administered, but rather to the remote possibility of human error and negligence inherent in any human endeavor. *Campbell*, 18 F.3d at 668.

On the other side of the ledger, it is well settled that the state has a significant interest in meting out a sentencing of death in a timely fashion. *Nelson*, 124 S. Ct. at 2123 (citing *Calderon v. Thompson*, 523 U.S. 538, 556–57, 118 S. Ct. 1489 (1998)). The state's interest in finality and in meting out a sentence of death in a timely manner acquires "an added moral dimension" when the lengthy state and federal proceedings reviewing the conviction and sentence have run their course. *Calderon*, 523 U.S. at

556–57. As the Court has discussed in detail above, the likelihood of Plaintiff's success on the merits is remote.

Lastly, public interest clearly favors the orderly administration of justice. The Fourth Circuit has admonished that "[l]ast minute stays [of execution] . . . represent an interference with the orderly processes of justice which should be avoided in all but the most extraordinary of circumstances." *Stockton v. Angelone*, 70 F.3d 12, 13 (4th Cir. 1995). There is nothing extraordinary about this case. Plaintiff has had seven (7) years to challenge his method of execution. The alleged deficiencies in the lethal injection process he advances have been the subject of repeated litigation over the last decade. Each of the factors that this Court must consider in granting the relief Plaintiff requests weigh decidedly and firmly against him. Accordingly, Plaintiff's Motion for Preliminary Injunction and Stay of Execution is denied, and Defendants' Motion to Dismiss is granted.

An appropriate Order will accompany this Memorandum Opinion.

                                                        /s/
                                         Henry E. Hudson
                                         United States District Judge

Date: April 19, 2006
Richmond, Virginia